THE CHANCELLOR et al.

*v.*

EMMA BELL et al.

1. Where two mortgages are taken in succession, under orders of the court, to secure the same fund, the interest of which is directed to be paid to a widow during her lifetime, and the word "successors" has been omitted from both, and the first one has been foreclosed without reformation, there is no objection

to ordering a reformation of both, upon a proper bill being filed for that purpose, and also to foreclose the second, in order to perfect the title, since the rights of no one can be prejudiced. In such case, the court intends to accept of nothing less than the highest and best security for the moneys over which it has charge by the law.

2. The mortgage in such case having been given to the chancellor, in his official capacity, is sufficient notice to the purchaser of the equity of redemption to put him on his guard as to the contents of the orders under which such mortgage was given.

3. The assignee of a mortgage who has given no other consideration therefor than his own promissory note, upon which he has paid nothing, is not a *bona fide* holder for value.

On bill, answer and proofs.

*Mr. F. S. Olds,* for the complainant.

*Mr. H. K. Coddington,* for the defendant Bell.

*Mr. L. Van Blarcom,* for the defendant Hedges.

Bird, V. C.

In 1869, there was a sale of land under proceedings in partition in this court. Over $22,000 of the proceeds were ordered to be invested on bond and mortgage in the name of the chancellor, so that the interest should be paid to Mrs. Shotwell, the widow of the deceased ancestor; and of this sum $904.11 were so secured on the land which had been purchased by Mr. Bell as hereinafter named; but such bond and mortgage were only made to the chancellor and to his assigns, the word "successors" having been omitted.

The interest on this mortgage being unpaid, in 1873, Mrs. Shotwell, the widow, filed her petition for that purpose and obtained leave to foreclose said mortgage; in 1874, in December, a decree was entered directing a sale of the mortgaged premises. A sale was effected in May, 1875. Mrs. Shotwell was the purchaser.

Upon the petition of Mrs. Shotwell, the chancellor directed a special master to invest the sum of $904.11 on bond and mort-

gage, secured by good real estate, in such manner that the interest should be paid to the said Mrs. Shotwell. The master took such bond and mortgage from Mrs. Shotwell, the mortgage being on the land which she had so purchased under the last named sale. This mortgage was also taken to the chancellor and his assigns, the word "successors" being omitted. And so also was the clause requiring the payment of interest omitted.

Mrs. Shotwell only held the title to the land covered by this mortgage from May until the following October, when she conveyed it to the defendant, Dr. Hedges.

In October, 1882, Dr. Hedges conveyed this land to Emma Bell, one of the defendants, and took back from her a mortgage to secure the sum of $1,346, so much of the purchase money. This mortgage he assigned to Nelden, his nephew, who filed his bill to foreclose it; but proceedings thereon were stayed by an order of this court, after the bill in this cause was filed.

Mrs. Shotwell assigned all of her right, title and interest of every kind in the bond and mortgage, so given by her to the chancellor, to Compton, one of the complainants, and he brings this suit to foreclose this mortgage. The bill sets out the origin of both of the said mortgages and all the transactions respecting them—the petition for the investment of the money, the order of the court authorizing the master to invest it, the fact that it was invested and the manner in which it was done in each case, and shows that there were no words of inheritance or succession in either of the said mortgages, and that there was no provision in the latter for the payment of interest to Mrs. Shotwell, as widow, during her life.

The prayer of the bill is, that both of the said mortgages be reformed, by adding the word "successors" in each, in the appropriate places, and by inserting a clause in the latter one providing for the payment of interest to Mrs. Shotwell during her life, and that both be foreclosed.

Do these mortgages require to be reformed in order to express the true intention of the parties? Of this I have no doubt, under the evidence. The orders of the court, the situation of the parties, and the object in view at the time of the execution

of them, make this most apparent to my mind. The court meant to do right and not to consent to the perpetration of such a wrong as might have ensued from a security so imperfect. Although the orders of the court did not direct the master to insert the word "successors," it was as clearly implied as though it had; for the court intended to accept nothing less than the highest and best security known to the law. And that the word "heirs" is essential to pass a fee-simple in a grant, is so well settled that authorities need only be referred to. *Adams* v. *Ross, 1 Vr. 505, 511; Kearney* v. *Macomb, 1 C. E. Gr. 189; Sisson* v. *Donnelly, 7 Vr. 432; Melick* v. *Pidcock, 17 Stew. Eq. 525.*

But the word "successors" in a deed to a corporation aggregate is not essential in order to pass a fee. *2 Pres. Est. 42.* "A body corporate, aggregate of many persons, capable of being continued by succession, as a mayor or commonalty, will take an estate in fee, although no words of limitation are stated in the grant to them extending in terms the benefit of the grant to the successors; while in a grant to a corporation sole the word 'successors' must be used, in most instances and with very few exceptions, as equivalent to the word 'heirs' in a gift to a natural person." This author again (*p. 48*) says: "Sole corporate may take an estate in fee without any words of limitation or succession in those instances in which the grant is to the corporation by its corporate or collective name, and not merely by that term or appellation which in common acceptance applies to the individual in whose person the character of the corporation especially is fulfilled." See, also, *2 Pres. Est. 50; 1 Inst. 9 a; Overseers* v. *Sears, 22 Pick. 122; Ang. & A. Corp.* § *172.*

And it seems to be fully settled that, when the chancellor is acting in any such capacity as is here represented, he is to be regarded as acting as a corporation sole. *Chancellor* v. *Hoxsey, 12 Vr. 217.*

Has the court the power in this suit to deal with that former mortgage, it having been foreclosed by a decree, and a sale made by that decree? No objections have been taken to the bill because of the allegations or prayers in this respect. I have, however, no doubt as to the ability of the court, upon a proper

bill being framed, in a case like the present, all of the parties being in court, to deal with such cases in a single suit. And if this bill should appear to be inadequate to meet all of the issues raised by the evidence, or to sustain the prayers annexed thereto, proper amendments can be made.

In my judgment, the mortgages should be reformed by inserting the word "successors" in the proper places in each, and thereby perfect the title.

Under the circumstances, can the bond and mortgage given by Mrs. Shotwell to the chancellor be reformed by adding therein or thereto a clause providing for the payment of interest to Mrs. Shotwell? The order of the court explicitly directed this to be done ; and no other reason for its absence has been suggested except that Mrs. Shotwell giving the mortgage herself, there was no necessity in her providing for the payment of interest to herself. For the time being what was done was, in one sense, rightly done, but when the title passed from Mrs. Shotwell, without more, it was plain enough that one contingency, very common in human affairs, had not been provided for.

Counsel for Dr. Hedges insisted that the mortgage was rightly drawn, and, with no little plausibility, urged that the insertion of the interest-bearing clause, requiring her to pay interest to herself, would have been very absurd. And yet, however much force there may be in this view, I can have no doubt but that the learned counsel, after the sad experience of this case, would not allow the lesson here taught to be unimproved should an opportunity offer to make an application of it. Had the order of the court been obeyed, however absurd the appearance, this unhappy phase of the litigation would have been avoided.

But can the court properly exercise its power in this case? In the first place, I think that Dr. Hedges is chargeable with a knowledge of the record which was the foundation of all the proceedings respecting this bond and mortgage. *Roll* v. *Rea*, *21 Vr. 264*. He examined the record of the mortgage and learned from it that the chancellor had in some way an interest in it, and also that that interest was for other persons than himself. (2) He learned this from the record after he had inquired

of Mrs. Shotwell and ascertained from her that, as he says, she did not know much about it. His statement makes it very evident that she did not know anything about the nature or extent of the security for her rights which she supposed she had. And this is greatly fortified by what Dr. Hedges says, when he is giving an account of an interview between himself and Mrs. Shotwell, after the deed for the premises had been delivered by her to him. In speaking of her demanding the interest and of his denial of any liability to pay, he said : "I thought perhaps her not requiring me to pay it by the deed was in consequence of an oversight on her part." (3) He promised to pay her the interest as it accrued on the amount of principal named in the bond, and did so until the year 1879. It is true he says that he only promised to pay it for one year; but he did pay, and she always insisted upon his obligation to pay it. (4) Mr. Roe, a friend of both parties, and who was acting as an intermediary as to part of the business, swears that he understood that Dr. Hedges was to pay interest. And this, I think, is the unmistakable effect of the evidence of Mrs. Shotwell, though old and feeble when making her statement. Besides this, he told W. H. Bell, who was acting in behalf of his wife, in the year 1882, that the interest had all been paid to Mrs. Shotwell. Although Dr. Hedges denies this, yet it is very probable that there was a conversation on this subject; for this same Bell had been the purchaser of this very parcel of land at the partition sale, and had given the first mortgage above named and which was foreclosed for the non-payment of interest. He must have known the whole condition, especially as soon as Dr. Hedges told him of the existence of this mortgage due to the chancellor. (5) In the deed which he delivered to Mrs. Emma Bell for this land, he provided that, "the said Emma Bell and William H. Bell agree to assume as part payment hereof and that they will pay annually to the said Joseph Hedges, his heirs or assigns, the legal interest accruing on said mortgage until the principal becomes due." William H. Bell swears that the reason that Dr. Hedges gave for requiring the interest on this $904.11 mortgage paid to himself was, that Mrs. Shotwell was so very particular and required

prompt payment. When Dr. Hedges's attention is called to this, he says:

> " Well, at that time Mrs. Shotwell had brought suit against me for interest on the chancellor's mortgage. I explained that to Mr. Bell and told him that I had voluntarily paid it for two or three years, but that I had stopped it and wanted him to pay the interest on that $904.11, because it was a part of the property and I wanted interest for everything except cash."

He also says that he told Bell that Mrs. Shotwell's claim to interest would have to be decided by the court, and that he expected him to pay the interest that Fall. He very positively denies making any promise to Bell to pay the interest to Mrs. Shotwell. It should be noticed that, when Mrs. Bell purchased of Dr. Hedges, she gave him a mortgage for part of the purchase-money, and when the interest was paid thereon, the interest on the $904.11 was also paid, and the whole amount endorsed on the Bell bond, Hedges adding to the endorsement "Including Shotwell mortgage."

In these considerations I have given no attention to the facts that Dr. Hedges lived in the same small village with Mrs. Shotwell, and was her family physician and had been for a long time, and was very intimate with the family. In this connection, I think it will also appear as an important fact, that Dr. Hedges drew the deed by which this title was passed to him. In a very few days after he accepted the deed and had gone into possession of the property, and had gotten into some trouble with a man who claimed possession, he returned to Mrs. Shotwell with the deed which she had given to him and desired her to take it back and to return to him the securities and money which he had given to her; but this she was not willing to do, but urged the doctor to keep the land and to pay her the interest coming to her, at which time he says he thought it was an oversight that Mrs. Shotwell had not required him to pay the interest to her by the deed. It will be remembered that, by his own hand, he had inserted in this deed that he took the title subject to this mortgage, which secured the amount of money on which Mrs. Shotwell claimed this interest.

When the whole case is considered, I am led to the conclusion, that there was such an understanding between the parties as amounts to an equitable obligation upon the part of Dr. Hedges to pay this interest, or at least to impose it as a burden on the land, and that, therefore, the bond and mortgage should be so reformed as to express that obligation and impose the burden upon the land, according to the requirements of the order of the court.

This will work no hardship on any subsequent purchaser; not on Dr. Hedges, for he promised to pay; or at all events, when the relations which he held to this old lady are taken into account, together with his own admissions and conduct, I think it is the duty of the court to require him to stand in that place in which Mrs. Shotwell always supposed that he stood. It does no hardship to Mrs. Bell, for she took the title with full knowledge of the rights and claims of Mrs. Shotwell; and if she finds that the land is burdened with a larger amount of interest than she expected, it is far more due to her confidence in Dr. Hedges than to any fault of Mrs. Shotwell. Besides, the amount of interest which remains unpaid on the Shotwell mortgage should be deducted from the amount of the mortgage given by Mrs. Bell to Dr. Hedges. Although this Bell mortgage is now in the hands of Mr. Nelden, if he did not take with the full knowledge of the situation, the only consideration which he has thus far given for it is his own promissory note, upon which nothing has been paid; so that in no respect can he enjoy the protection of the court.

I think that the injunction against the suit instituted by Mr. Nelden to foreclose the said Bell mortgage should be made perpetual.

A decree will be advised in accordance with these views, with costs. The complainants are entitled to their costs. The defendant Bell is entitled to costs of her cross-bill as against the defendant Hedges.